IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| APRIL C. ADAMEC, ) | |
| ) | CASE NO. 1:13-CV-1487 |
| Plaintiff, ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | MEMORANDUM OPINION & ORDER |
| ) | |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 16). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff April Adamec's ("Plaintiff" or "Adamec") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the Commissioner's decision.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits on October 5, 2010. (Tr. 187-200).  Adamec alleged she became disabled on May 12, 2010, due to suffering from bipolar disorder, depression, heart attacks, lung shortage, and back problems. (Tr. 187, 194, 214).  The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 121-27, 130-35).

1

At Adamec's request, administrative law judge ("ALJ") Thomas Randazzo convened an administrative hearing on January 11, 2012 to evaluate her applications. (Tr. 28-64).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*).  A vocational expert ("VE"), Nancy Drew Borgeson, also appeared and testified. (*Id.*).  On February 17, 2012, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 12-23).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 6).   The Appeals Council denied her request for review, making the ALJ's February 17, 2012 determination the final decision of the Commissioner. (Tr. 1-5).  Adamec now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Adamec was born on February 9, 1965, and was 47 years old on the date the ALJ rendered his decision. (Tr. 33, 65). Accordingly, she was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff completed high school and had past relevant work as a machine operator and packer. (Tr. 58).

### B. Medical Evidence[2]

Adamec suffered from coronary artery disease dating back to 2002. In July 2002, Plaintiff suffered from a myocardial infarction, or heart attack, which led to the placement of coronary stents. (Tr. 400).

During April 2007, Plaintiff treated for left shoulder pain that she indicated had been present for several months. (Tr. 309). A physical examination showed a diminished range of motion. Matthew Schaeffer, M.D., diagnosed left side rotator cuff tendonitis, bicipital tendonitis, and subacromial bursitis. (Tr. 309, 314). Plaintiff was instructed to rest her left shoulder, prescribed anti-inflammatories, and referred to physical therapy. (Tr. 310). In June 2007, Adamec reported to Dr. Schaeffer that her left shoulder pain was worse, even with physical therapy. (Tr. 301). She stated that the pain worsened after performing repetitive movements at work on an assembly line. Dr. Schaeffer provided a subacromial bursal injection. (*Id.*). A July 2007 MRI of Adamec's left shoulder showed advanced joint arthrosis, with marrow edema of the distal clavicle and acromion, but no rotator cuff tear. (Tr. 296). It does not appear that Plaintiff pursued formal medical treatment for her left shoulder after July 2007. (Tr. 297).

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

3

In September 2008, Plaintiff complained of shortness of breath and underwent an echocardiogram. (Tr. 278). The test was normal aside from mild mitral regurgitation, mild tricuspid regurgitation, and minimal pulmonary hypertension. (Tr. 279).

Plaintiff first treated for back symptoms in October 2008. On October 3, 2008, Adamec presented to Dr. Schaeffer, with complaints of low back pain. (Tr. 276). Her pain was located on the lower right side and radiated into the right buttock, with occasional numbness in the leg. (*Id.*). Upon examination, Plaintiff had tenderness to palpation over the right paralumbar spinal muscles with significant muscles spasms. Her heel and toe walk were intact and strength in the lower extremities was 5/5. Dr. Schaeffer diagnosed a lumbosacral strain or sprain. The doctor instructed Adamec to perform low back exercises and use heat and ice, prescribed anti-inflammatory medication and a muscle relaxant, and advised her not to drive or operate heavy equipment. (*Id.*). On October 10, 2008, Adamec reported her back pain had lessened and range of motion had improved. (Tr. 274). By October 24, 2008, Plaintiff reported that her back was better and she experienced no radiation. (Tr. 272). She was performing her exercises as prescribed, and Dr. Schaeffer advised her to continue doing so. (*Id.*).

In March 2010, x-ray images were taken of Plaintiff's lumbar spine. (Tr. 322). James Frank, M.D., assessed that the images revealed mild scoliosis and mild degenerative changes of the lower lumbar spine. (*Id.*).

In August 2010, Plaintiff presented to cardiologist Rhaul Dhingra, M.D. (Tr. 337). She reported that she smoked half a pack of cigarettes per day. (*Id.*). Dr. Dhingra ordered a left heart catheterization with coronary angiography due to Plaintiff's reports of chest pain. (Tr. 334, 338). He instructed Plaintiff to cease smoking, participate in an exercise program, reduce stress, and reduce cholesterol through dietary modification. (*Id.*). On August 6, 2010, Plaintiff underwent

4

the prescribed cardiac catheterization. (Tr. 334-35). Based on the results, Dr. Dhingra advised Adamec to pursue medical management and maintain regular follow up with her primary care physician or cardiologist. (Tr. 334). The doctor diagnosed angia, stable or unspecified, and atherosclerosis. (*Id.*).

On February 18, 2011, Plaintiff underwent a one-time physical consultative examination with Mehdi Saghafi, M.D. (Tr. 350-57). Plaintiff complained about constant pain across her lower back that extended to her right lower extremity, as well as occasional pain in her chest for which she took nitroglycerine. (Tr. 350). Upon physical examination Plaintiff's heart sounds were normal. (Tr. 352). An examination of the back revealed scoliosis at 15 degrees, but no muscle spasms. (*Id.*). Plaintiff's straight leg raises were limited to 60 degrees due to pain in the lower back. (*Id.*). Adamec's strength in all extremities was 5/5 or "normal." (Tr. 354). Aside from some decreased mobility in her dorsolumbar spine and knee, Plaintiff displayed a normal range of motion in all areas. (Tr. 356-57).

Dr. Saghafi diagnosed low back syndrome and remote residual angina pectoris status post stenting two coronary arteries. (Tr. 353). He recommended that Plaintiff was able to sit, stand, and walk for a total of 5 hours per day; lift and carry 5 pounds frequently and 6 to 20 pounds occasionally; and climb stairs one level at a time. (*Id.*).

On February 24, 2011, state agency consultant James Gahman, M.D., conducted a review of the record and opined that Plaintiff could perform light work, with some additional limitations. (Tr. 72-74). He indicated that Plaintiff could sit, stand, or walk, each for six hours in an eight hour workday. (Tr. 73). Dr. Gahman gave "less weight" Dr. Saghafi's opinions, as they were not consistent with other objective findings. (*Id.*). For example, Dr. Gahman found Dr.

Saghafi's physical examination findings of 5/5 strength throughout and a decreased range of motion in only the lumbar spine undermined the degree of physical limitations imposed. (*Id.*).

On August 2, 2011, Jerry McCloud, M.D., conducted a second review of the record and likewise opined that Plaintiff could perform light work with added modifications. (Tr. 101-03). Dr. McCloud also questioned the limitations Dr. Saghafi recommended. (Tr. 101).

On December 1, 2011, Plaintiff treated with Dr. Dhingra and complained of chest pain. (Tr. 400). She indicated that during the preceding week, her pain was off-and-on, but improved with deep breaths and within twenty minutes after taking nitroglycerin. Since her last visit, Plaintiff indicated she was still smoking and had not taken her medication for three days. Dr. Dhingra noted that Adamec was compliant with keeping fresh nitroglycerin on hand, but not with tobacco avoidance, alcohol avoidance, low fat diet, or exercise. (*Id.*).

On December 2, 2011, Adamec underwent another cardiac catheterization, which appeared to show no significant findings. (Tr. 405). Plaintiff's December 2, 2011 discharge instructions limited her from driving for the next 48 hours and lifting no more than 10 pounds for one week. (Tr. 403). Plaintiff was also instructed not to shower or remain in a regular sitting position for more than one hour without taking a break to walk and sit in a reclined position. (Tr. 403). These limitations had no specified duration.

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since May 12, 2010, the alleged onset date.

3. The claimant has the following severe impairments: low back/lumbosacral strain; history of coronary artery disease; residual angina pectoris status post stenting 3 coronary

6

arteries; left shoulder arthrosis; anxiety disorder; post-traumatic stress disorder; and personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she can only occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can frequently balance and she can occasionally stoop, kneel, crouch, and crawl. She must avoid all exposure to hazardous machinery and unprotected heights. She is limited to tasks that are simple and routine. She is precluded from tasks that involve high production quotas and strict time requirements. She is precluded from tasks that involve arbitration, negotiation, or confrontation. She is limited to tasks that involve only superficial interaction with co-workers and the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 9, 1965 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

    . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2010, through the date of this decision.

(Tr. 14-23) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by rejecting one-time examiner Dr. Saghafi's opinion, and, instead, granting greater weight to the opinions of non-examining state agency consultants. The Court concludes that this argument does not warrant remand as substantial evidence supports the ALJ's decision.

Under 20 C.F.R. §§ 404.1527(d) and 416.927, a sliding scale of deference exists with regard to the medical opinion evidence an ALJ may consider when making the disability determination. As the Sixth Circuit has explained,

> An opinion from a treating physician is "accorded the most deference by the SSA" because of the "ongoing treatment relationship" between the patient and the opining physician. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (internal quotation marks omitted). A nontreating source, who physically examines the patient "but does not have, or did not have an ongoing treatment relationship with" the patient, falls next along the continuum. *Id.* A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference. *Id.*

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Thus, Plaintiff is correct in her observation that the opinion of a source who has examined a claimant is generally afforded greater deference than that of a medical source who has not done so. Nevertheless, "it is not a *per se* error of law" for the ALJ to credit the opinion of a nonexamining source over a source that has treated the claimant. *Id.* When formulating the residual functional capacity, the ALJ may reject any medical source opinion if the opinion is not well-supported by medical evidence or is inconsistent with the record. *Id.* The "ALJ need only explain its reasons for rejecting a treating source because such an opinion carries 'controlling weight' under the SSA." *Id.* (*citing Smith*, 482 F.3d at 876); *see also*, *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (ruling that the medical opinion of a physician who examined the claimant on one occasion was "entitled to no special degree of deference"). However, where an ALJ's residual functional capacity conflicts

9

with a medical source opinion in the record, the ALJ should provide some explanation as to why that opinion was not adopted. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *7 (July 2, 1996).

In the present case, the ALJ noted that Dr. Saghafi performed a consultative examination in February 2011, making him an examining, but non-treating source. (Tr. 19).  The ALJ nevertheless explained his rationale for giving "less weight" to the doctor's opinion. (Tr. 20). The ALJ explained that Dr. Sagahfi's recommended RFC was not entirely consistent with the findings from the doctor's objective examination. (*Id.*).  More specifically, the ALJ noted that the doctor found 5/5 strength in all areas and a decreased range of motion only in Plaintiff's back. These findings called into question Dr. Sagahfi's conclusion that Plaintiff could stand, walk, or sit, for a total of only five hours in an eight hour work day. (*Id.*).  Reports from state agency reviewing consultants, Drs. Gahman and McCloud, coincide with the ALJ's analysis by rejecting Dr. Sagahfi's opinion on the same grounds. (Tr. 73, 101).

Plaintiff contends that the ALJ's rationale was insufficient to reject Dr. Sagahfi's limitations.  She maintains that her coronary artery disease and angina pectoris would not limit her range of motion or strength, but would result in chest pain upon exertion, thus supporting the doctor's limitations.  She argues that the ALJ found these impairments to be severe and ought to have included limitations in the RFC.  However, the ALJ indicated that he limited Plaintiff to sedentary work, in part, due to her heart condition. (Tr. 20).  Furthermore, Plaintiff points to no other medical source recommending limitations on the basis of her heart condition that would last for the duration necessary to establish disability.  It appears that Plaintiff's treating cardiologist Dr. Dhingra had not identified any limitations or restrictions lasting for extended duration.  As the ALJ observed, Dr. Dhingra had, in fact, at times instructed Plaintiff to be more

10

active. (Tr. 19). Accordingly, the ALJ adequately explained his decision not to adopt Dr. Saghafi's opinion.

As to the state agency reviewer's assessments, the regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see also* Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994); SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Accordingly, opinions from such doctors may be entitled to great weight if supported by the record. *King v. Astrue*, No. 6:09-162, 2010 WL 1257753, at *4 (E.D. Ky. Mar. 26, 2010); *Coleman v. Astrue*, No. 2:09-0036, 2010 WL 4094299, at *11 (M.D. Tenn. Oct. 18, 2010).

Here, the ALJ granted the state reviewers' opinions significant weight, because overall the doctors' assessments were supported by the record. (Tr. 20). However, the ALJ further limited Plaintiff to sedentary, rather than light work as recommended by the state agency reviewers, due to Plaintiff's heart and shoulder conditions. (*Id.*). The agency physicians' opinions, and the ALJ's analysis of such opinions, are supported by substantial evidence. As the ALJ noted, March 2010 x-rays of Plaintiff's lumbar spine showed only mild findings, but an MRI of Plaintiff's left shoulder showed advanced joint arthrosis. (Tr. 18). In regard to her heart treatment, Plaintiff was not compliant with tobacco avoidance, diet, or exercise. (Tr. 19). While Plaintiff was treated in August 2010 and December 2011 for complaints of chest pain, Dr. Dhingra imposed no physical limitations, aside from those temporarily associated with her cardiac catheterization. (Tr. 18-19). Plaintiff's most recent cardiac catheterization seemed to show no significant change in her coronary artery disease. (Tr. 19).

Plaintiff contends that the state agency reviewers did not have a complete record before them, and, thus, the ALJ should not have accorded them significant weight.  However, the ALJ accounted for the rather small sum of medical evidence that arose after the state agency reviews formulated their opinions in February and August 2011 (Tr. 19), and Plaintiff points to no significant change in her physical health or functioning that would undermine the opinions of the state agency reviewers.  Based on the evidence related to her heart and shoulder, the ALJ also found Plaintiff to be more limited that the state agency doctors opined. (Tr. 20).

The ultimate responsibility for determining a claimant's RFC is reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Here, in formulating the RFC, the ALJ sufficiently considered and weighed the evidence, including medical opinion evidence, testimony, Plaintiff's pursuit of and compliance with medical treatment, and Plaintiff's attempts at work. (Tr. 18-20).  The ALJ provided an adequate analysis of the opinions issued by medical sources and his conclusions are supported by substantial evidence.

## VI.  DECISION

For the foregoing reasons, the undersigned finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  June 5, 2014.